**Karl GABELMANN, Appellant,**

v.

**NFO, INC., Appellee.**

No. 98–924.

Supreme Court of Iowa.

Feb. 16, 2000.

Stephen N. Greenleaf of Lynch, Greenleaf & Michael, L.L.P., Iowa City, for appellant.

Gayla R. Harrison, Ottumwa, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and TERNUS, JJ.

NEUMAN, Justice.

This is the second chapter in a controversy over defendant NFO, Inc.'s refusal to pay its employee, plaintiff Karl Gabelmann, a promised housing allowance. The controversy extended over the life of Gabelmann's tenure with the company—twenty years—resulting in a jury verdict for $22,000. In an earlier opinion, this court affirmed the jury's finding of employer liability but remanded for entry of a reduced judgment in recognition of the two-year statute of limitations for wage payment disputes. *Gabelmann v. NFO, Inc.*, 571 N.W.2d 476, 484 (Iowa 1997) [hereinafter *Gabelmann I*]. We returned the case to district court for further proceedings on the question of liquidated damages and attorney fees to which Gabelmann might be entitled under Iowa Code chapter 91A. *Id.*

On remand, the parties stipulated that Gabelmann's unpaid wages for the two-year period preceding commencement of this suit were $1200. The district court then rejected Gabelmann's claim for liquidated damages, concluding NFO's conduct was not "intentional." *See* Iowa Code § 91A.8 (under Wage Payment Collection Law, employer liable for liquidated damages, costs, and attorney fees incurred in recovering wages *intentionally* unpaid). The court also pared Gabelmann's attorney fees from $29,195.50 to $3500. In reducing the award, the court characterized Gabelmann's suit as "simple" and akin to a small claims action from the start. The court also rejected Gabelmann's request to compel production of billing records for NFO's attorneys. Gabelmann had claimed they were a relevant measure of the "usual and necessary" fees for recovering his wages.

Gabelmann appealed. We transferred the case to our court of appeals. That court found Gabelmann entitled to liquidated damages as a matter of law. It also ruled the billing records of NFO's attorneys were relevant on the question of Gabelmann's attorney fee claim. It remanded the case for further discovery and a new hearing on trial and appellate attorney fees.

On NFO's application, we granted further review. NFO no longer contests the judgment for $1200 in liquidated damages,

but it seeks reversal of the order to divulge its own counsels' billing records. It also resists remand on the question of attorney fees.

We conclude on our review that the trial court showed no abuse of discretion when it refused to compel production of NFO's attorney fee records, but its arbitrary reduction in Gabelmann's request for fees has no support in the record and must be reversed. With considerable reluctance, we therefore reverse and remand for yet another hearing on the question of attorney fees.

### I. Scope of Review.

■ Because this case was tried at law, our review on appeal is limited to the correction of legal error. *Audus v. Sabre Communications Corp.,* 554 N.W.2d 868, 871 (Iowa 1996). On both of the issues raised on appeal—the discovery of opposing counsel's billing records and assessment of attorney fees—the trial court is vested with broad, but not unlimited, discretion. *Pierce v. Nelson,* 509 N.W.2d 471, 473 (Iowa 1993) (discovery); *Mississippi Valley Broad., Inc. v. Mitchell,* 503 N.W.2d 617, 619 (Iowa App.1993) (attorney fees). Reversal is warranted only when the court rests its discretionary ruling on grounds that are clearly unreasonable or untenable. *Pierce,* 509 N.W.2d at 473; *Mississippi Valley,* 503 N.W.2d at 619.

### II. Issues on Appeal.

■ When an employee prevails on a wage claim under Iowa Code chapter 91A, the district court is required to assess attorney fees and costs against the employer. *Audus,* 554 N.W.2d at 874. By statute, the court shall base its assessment on the expense "incurred in recovering the unpaid wages and determined to have been *usual and necessary.*" Iowa Code § 91A.8 (emphasis added). The questions here are (1) whether the court abused its discretion when it found opposing counsels' fees irrelevant to this assessment, and (2) whether the court's fee award satisfies the

statute's "usual and necessary" standard. We shall consider the arguments in turn.

■ **A. *Discovery.*** At the hearing on attorney fees, Gabelmann's counsel submitted a twenty-nine page statement itemizing 484 hours of attorney, law clerk, and paralegal time devoted to this case from late 1993 through mid–1997. He supported the claim with the affidavits of several experienced trial attorneys and the deposition testimony of another seasoned trial attorney. These attorneys attested to the reasonableness of the hourly rates charged during this time period ($95—$110 for lawyer, $50 for paralegal, $35 for law clerk) and the number of hours necessarily devoted to research, discovery, pretrial motions, trial preparation, post-trial motions, appellate brief preparation, oral argument, and further review. The deposed attorney offered the opinion that it costs $15,000 to mount a jury trial in even the simplest of cases.

Pertinent to this appeal, Gabelmann's counsel also asked the court to consider the billing records of the two attorneys employed by NFO to defend this litigation. NFO resisted production of the records on the ground they were privileged and irrelevant. The court concluded the records were irrelevant and refused to compel NFO to produce them for its consideration. Gabelmann contends the court's ruling constitutes an abuse of discretion warranting reversal.

There are no Iowa cases directly on point. Confronted with a similar question, however, the federal court in Iowa has concluded that opposing counsel's time and hourly rates devoted to the case—to the extent those items reflect "the prevailing market rates in the relevant community"—are relevant to a plaintiff's statutory attorney fee claim. *Murray v. Stuckey's, Inc.,* 153 F.R.D. 151, 153 (N.D.Iowa 1993). Whether the production of such fee statements should be compelled, however, is a decision customarily left to the informed discretion of the court. *Id.* (citing *In re*

*Fine Paper Antitrust Litigation,* 751 F.2d 562, 587 (3d Cir.1984)). That decision will logically turn on the nature of the objections posed by defendant to the request. *Id.*

Here, NFO's counsel conceded the reasonableness of the hourly rates charged by Gabelmann's attorney. She merely contested the *number* of hours spent to ultimately recover only $1200. Her contention that her own time records are irrelevant boils down to a claim that what NFO must pay its attorneys to defend Gabelmann's claim has no bearing on his cost to pursue it.

On balance, we are not convinced that NFO's attorney billing records would be irrelevant to the question whether Gabelmann's fee claim represents the usual and necessary expense of pursuing a suit for unpaid wages. But neither can we say the court abused its discretion when it refused to consider them. The court had before it a concession concerning the reasonableness of counsel's hourly rate, and substantial evidence concerning the hours devoted to pursuing the claim, supported by expert testimony on the usual and necessary cost of doing so. Given this record, the court was well within its discretion to limit the introduction of further, potentially duplicative, evidence.[1] In other words, the court could make a fair determination whether Gabelmann's fees were "usual and necessary" without access to NFO's billing records. No ground for reversal appears.

■ **B. *Usual and Necessary Expense.*** The crucial question is whether the trial court abused its discretion when it entered a fee award roughly one-eighth of the amount claimed by Gabelmann. Plainly the court believed the modest sum eventually recovered by Gabelmann did not justify the time and expense devoted to securing it. Gabelmann challenges this reasoning on appeal, insisting the court's

meager award undermines the remedial purpose of chapter 91A. We are inclined to agree.

■ As already noted, Iowa Code section 91A.8 makes the award of attorney fees mandatory in successful wage claim litigation, irrespective of whether the employer's conduct was intentional. *Audus,* 554 N.W.2d at 874. The purpose of the statute is to reimburse the employee for the expenses incurred in suing for back wages. *Maday v. Elview–Stewart Sys. Co.,* 324 N.W.2d 467, 470 (Iowa 1982). Such reimbursement is not unlimited, however. Section 91A.8 limits the employer's liability to attorney fees deemed "usual and necessary" to recover the unpaid wages. On that question, the trial judge has presumed expertise. *Maday,* 324 N.W.2d at 470.

In other contexts, we have recited the following factors as bearing on the determination of an appropriate award of statutory attorney fees:

> the time necessarily spent, the nature and extent of the service, the amount involved, the difficulty of handling and importance of the issues, the responsibility assumed and results obtained, the standing and experience of the attorney in the profession, and the customary charges for similar services.

*Vaughn v. Must, Inc.,* 542 N.W.2d 533, 541 (Iowa 1996) (age discrimination in employment claim); *Lynch v. City of Des Moines,* 464 N.W.2d 236, 237–38 (Iowa 1990) (civil rights action under Iowa Code chapter 601A); *Green v. Iowa Dist. Ct.,* 415 N.W.2d 606, 607–08 (Iowa 1987) (criminal court-appointed attorney).

■ The parties concede the propriety of applying the foregoing factors in determining the "usual and necessary" standard under section 91A.8. Not surprisingly, however, they approach the task from op-

---

1. Gabelmann has contended throughout these proceedings that NFO has paid as much, if not more, to its attorneys than Gabelmann seeks to recover. From NFO's silence on this point, the court could reasonably infer that NFO's attorney bill would mirror Gabelmann's in size and scope.

posing viewpoints. NFO relies heavily on hindsight to support its claim that the case was essentially a small claim, never worth more than the $1200 (plus $1200 liquidated damages) Gabelmann ultimately recovered. Gabelmann's counsel argues, on the other hand, that every step itemized on his fee statement was necessary "to gain some measure of justice" for his client.

Gabelmann has the better argument. From the outset the parties sparred over the applicable statute of limitations. Gabelmann claimed NFO's failure to pay his monthly housing allowance over his many years of employment constituted a breach of contract which did not accrue, for limitations purposes, until the last unpaid installment. *See Audus,* 554 N.W.2d at 873 (applying "continuous, open, current account" treatment to claim for unpaid commissions). This theory was ultimately rejected in favor of a wage-based theory that limited recovery to unpaid monthly payments due within two years of when the petition was filed. *Gabelmann I,* 571 N.W.2d at 482. That is not to say, however, that Gabelmann's claim was meritless. It was sufficient to overcome two pretrial motions for summary judgment filed by NFO, matters which Gabelmann was required to defend. It also merited substantial discussion in *Gabelmann I.*

Moreover, NFO never offered a cent to settle Gabelmann's claim for unpaid housing allowance as an unpaid wage. Notwithstanding its "advice" to Gabelmann's counsel that any recovery on his claim would be limited to two years' wages, NFO *never* conceded liability on the claim for *any* time period. It never responded, *in any amount,* to Gabelmann's offers of settlement. Gabelmann was ultimately forced to incur the expense for discovery and preparation incident to a jury trial. *See Lynch,* 464 N.W.2d at 240 (rejecting complaint of excessive attorney fees where city's obstinate stance prevented settlement of case and corresponding reduction in time and expense).

It may be inferred from NFO's arguments that it believes Gabelmann should have given up on this claim long before he did. Indeed, we believe it is precisely this attitude that the legislature sought to address with section 91A.8's remedial provisions. The risk of stonewalling an employee's claim for unpaid wages fairly rests on the party best equipped to financially bear it—*the employer.* NFO knew that when it forced Gabelmann to prove his claim at trial; when it ignored his offers of settlement; when it resisted, unsuccessfully, his appeal; when it resisted paying liquidated damages on remand; and when it sought further review on *this* appeal after the court of appeals directed the payment of liquidated damages and disclosure of its own attorney fee records.

■ The district court's opinion in this matter recited the boilerplate factors bearing on any award of statutory attorney fees. It then seemingly plucked the sum of $3500 out of thin air to compensate Gabelmann's attorney for his trouble. It is true that an attorney is not guaranteed payment at a fixed rate for every hour expended; nor is the court required to precisely account for how it computes a fee award. *Mississippi Valley,* 503 N.W.2d at 620. But a court which places undue emphasis on the size of the judgment, to the exclusion of all other pertinent factors, thereby disregards the public interest underlying this remedial statute. *See Lynch,* 464 N.W.2d at 239. Its misapplication of the statute constitutes an abuse of discretion. *Edson v. Chambers,* 519 N.W.2d 832, 834 (Iowa App.1994).

We therefore reverse and remand for a fresh consideration of Gabelmann's entitlement to attorney fees. On remand the court may, but is not required to, consider the fees paid by NFO to defend this very litigation. The court shall also receive evidence on, and enter judgment for, an award of attorney fees that will compensate Gabelmann for the usual and necessary expense of these appellate proceedings. *See Maday,* 324 N.W.2d at 471.

Costs on appeal shall be divided equally between the parties.

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

All justices concur except McGIVERIN, C.J., who concurs in the result.